UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JUDY ANN LAROCK,

                    Plaintiff,

v.                                              7:15-CV-0323
                                                (GTS/WBC)

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.
_____

APPEARANCES:                                    OF COUNSEL:

CONBOY, MCKAY LAW FIRM                          LAWRENCE HASSELER, ESQ.
  Counsel for Plaintiff
307 State St.
Carthage, NY 13619

U.S. SOCIAL SECURITY ADMIN.                     SANDRA GROSSFELD, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## REPORT and RECOMMENDATION

    This matter was referred for report and recommendation by the Honorable Judge

Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local

Rule 72.3(d).  (Dkt. No. 15.)  This case has proceeded in accordance with General

Order 18.

    Currently before the Court, in this Social Security action filed by Judy Ann

LaRock ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the

Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings. (Dkt. Nos. 10, 13.) For the reasons set forth below, it is recommended that Plaintiff's motion be denied and Defendant's motion be granted.

## I.     RELEVANT BACKGROUND

### A.     Factual Background

Plaintiff was born on June 5, 1969. (T. 139.) She completed the 9th grade. (T. 161.) Generally, Plaintiff's alleged disability consists of a back impairment and chronic obstructive pulmonary disease ("COPD"). (T. 160.) Her alleged disability onset date is April 30, 2010. (T. 58.) Her date last insured is December 31, 2015. (*Id.*) She previously worked as a home health aide. (T. 161.)

### B.     Procedural History

On January 30, 2012, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II of the Social Security Act. (T. 11.) Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On June 27, 2013, Plaintiff appeared before the ALJ, Elizabeth W. Koennecke. (T. 39-57.) On August 27, 2013, ALJ Koennecke issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 8-38.) On January 26, 2015, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

### C.     The ALJ's Decision

Generally, in her decision, the ALJ made the following five findings of fact and conclusions of law. (T. 14-34.) First, the ALJ found that Plaintiff met the insured status

requirements through December 31, 2015 and Plaintiff had not engaged in substantial

gainful activity since April 30, 2010.  (T. 14.)  Second, the ALJ found that Plaintiff had

the severe impairments of degenerative disc disease of the lumbar spine, COPD, and a

mental impairment.  (T. 14-21.)  Third, the ALJ found that Plaintiff did not have an

impairment that meets or medically equals one of the listed impairments located in 20

C.F.R. Part 404, Subpart P, Appendix. 1.  (T. 21-25.)  Fourth, the ALJ found that Plaintiff

had the residual functional capacity ("RFC") to perform a full range of sedentary work.

(T. 25.)[1]  The ALJ determined that Plaintiff was able to understand and follow simple

instructions and directions; perform simple tasks with supervision and independently;

maintain attention and concentration for simple tasks; regularly attend to a routine and

maintain a schedule; relate to and interact with others to the extent necessary to carry

out simple tasks; and handle work-related stress, in that she could make decisions

directly related to the performance of simple tasks in a stable, unchanging work

environment.  (*Id.*)  Fifth, the ALJ determined that Plaintiff was incapable of performing

her past relevant work; however, there were jobs that existed in significant numbers in

the national economy Plaintiff could perform.  (T. 31-34.)

## II.    THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A.    Plaintiff's Arguments

Plaintiff makes three separate arguments in support of her motion for judgment

on the pleadings.  First, Plaintiff argues the ALJ failed to properly assess Plaintiff's

credibility.  (Dkt. No. 10 at 11-14 [Pl.'s Mem. of Law].)  Second, Plaintiff argues the ALJ

---

[1]      Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting
or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one
which involves sitting, a certain amount of walking and standing is often necessary in carrying out job
duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria
are met.  20 C.F.R. § 404.1567(a).

failed to properly assess Plaintiff's RFC.  (*Id.* at 14-22.)  Third, and lastly, Plaintiff argues the ALJ failed to support her step five conclusion.  (*Id.* at 22-23.)

### B.    Defendant's Arguments

In response, Defendant makes two arguments.  First, Defendant argues the ALJ's RFC assessment was supported by substantial evidence.  (Dkt. No. 13 at 4-14 [Def.'s Mem. of Law].)  Second, Defendant argues the ALJ's step five determination was proper.  (*Id.* at 14-16.)

## III.   RELEVANT LEGAL STANDARD

### A.    Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct.

1420, 1427 (1971).  Where evidence is deemed susceptible to more than one rational

interpretation, the Commissioner's conclusion must be upheld.  *See Rutherford v.*

*Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial

evidence, a reviewing court considers the whole record, examining evidence from both

sides, because an analysis of the substantiality of the evidence must also include that

which detracts from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be

sustained "even where substantial evidence may support the plaintiff's position and

despite that the court's independent analysis of the evidence may differ from the

[Commissioner's]."  *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In

other words, this Court must afford the Commissioner's determination considerable

deference, and may not substitute "its own judgment for that of the [Commissioner],

even if it might justifiably have reached a different result upon a de novo review."

*Valente v. Sec'y of Health & Human Servs*., 733 F.2d 1037, 1041 (2d Cir. 1984).

### B.    Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine

whether an individual is disabled as defined by the Social Security Act.  *See* 20 C.F.R. §

404.1520.  The Supreme Court has recognized the validity of this sequential evaluation

process.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The

five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently
> engaged in substantial gainful activity.  If he is not, the [Commissioner]
> next considers whether the claimant has a "severe impairment" which
> significantly limits his physical or mental ability to do basic work activities.

If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

## IV.    ANALYSIS

### A.    The ALJ's RFC Determination and Treatment of Medical Evidence Determination

Plaintiff's RFC is the most she can still do despite her limitations. *See* 20 C.F.R. § 404.1545. In making an RFC determination, the ALJ must base his decision on all of the relevant medical and other evidence in the record. *Id.* at § 404.1545(a)(3).

The relevant factors considered in determining what weight to afford a medical opinion include the length, nature and extent of the treatment relationship, relevant evidence which supports the opinion, the consistency of the opinion with the record as a whole, and the specialization (if any) of the opinion's source. 20 C.F.R. § 404.1527(c)(1)-(6).

The opinion of a treating source will be given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2).

The following factors must be considered by the ALJ when deciding how much weight the opinion should receive, even if the treating source is not given controlling weight: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." 20 C.F.R. § 404.1527(c)(2)(i)-(iv). The ALJ is required to set forth his reasons for the weight he assigns to the treating physician's opinion. *Id.*, *see also* SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (quoting *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir.1998)).

In making her physical RFC determination the ALJ relied on the opinion evidence provided by Plaintiff's primary care provider, Marta Anghel, M.D., Plaintiff's pain management provider, Juan-Diego Harris, M.D., consultative examiner, Elke Lorensen, M.D., and non-examining State agency medial consultant, R. Blaber.

Dr. Anghel began treating Plaintiff in March of 2010. (T. 251.) On March 27, 2012, Dr. Anghel conducted a "physical exam . . . for SSI." (T. 234.) At that time, Dr. Anghel noted on examination that Plaintiff was pleasant, obese, and in mild distress due to pain. (*Id.*) She further observed Plaintiff had tenderness over her lumbar spine area, diminished flexion and extension in the lumbar area, negative leg raises, and bilateral cracking noises and mild swelling in her knees. (*Id.*) Dr. Anghel opined Plaintiff was "not able to work" due to her COPD, degenerative disc disease in the lumbar area, and osteoarthritis of the knees. (*Id.*) Although Dr. Anghel indicated that paperwork "for SSI" was filled out at this time (T. 234), there is no medical source statement from Dr. Anghel dated on or around March 27, 2012 in the record.

The record does contain a medical source statement completed by Dr. Anghel dated September 20, 2012. (T. 297-302.) In terms of exertional limitations, Dr. Anghel opined Plaintiff could occasionally, and frequently, lift less than ten pounds. (T. 297.) She opined Plaintiff could stand and/or walk less than two hours total in an eight hour workday. (*Id.*) Dr. Anghel opined Plaintiff could sit for less than six hours total in an eight hour workday. (T. 298.)

Regarding non-exertional limitations, Dr. Anghel opined Plaintiff could occasionally: climb, balance, kneel, crouch, crawl, and stoop. (T. 298.) Dr. Anghel opined Plaintiff had no manipulative limitations and no visual/communicative limitations. (*Id.*) Dr. Anghel opined Plaintiff should be limited in her exposure to: temperature extremes, dust, vibration, humidity/wetness, hazards, and fumes, odors, chemicals, and gases. (T. 300.)

The ALJ afforded Dr. Anghel's overall opinion "little weight" and her medical source statement "some weight." (T. 26, 27.) The ALJ reasoned Dr. Anghel's statement on March 27, 2012, was "clearly based on [Plaintiff's] subjective report of her functional limitations, rather than on any objective clinical findings." (T. 26.) Specifically, the ALJ noted Dr. Anghel never performed pulmonary testing, never diagnosed osteoarthritis of the knees, and the record failed to support any ambulation limitations. (T. 26-27.) The ALJ further reasoned that Dr. Anghel's medical source statement failed to contain supporting commentary or attachments and Dr. Anghel's statement was "contradicted" by her own treatment records and clinical findings. (*Id.*)

Plaintiff argues the ALJ erred in her assessment of Dr. Anghel's opinion because the ALJ failed to mention Dr. Anghel's treating relationship with Plaintiff. (Dkt. No. 10 at

16 [Pl.'s Mem. of Law].)  However, the ALJ clearly referred to Dr. Anghel as Plaintiff's "primary care provider" in her decision, therefore, the ALJ did not fail to mention that Dr. Anghel was Plaintiff's treating physician.  (T. 27.)

Plaintiff argues the ALJ failed to acknowledge treatment notations which Plaintiff asserts supported Dr. Anghel's opinion.  (Dkt. No. 10 at 16 [Pl.'s Mem. of Law].) Specifically, Plaintiff cites to evidence in the record which noted positive straight leg raises, muscle tenderness, spasm, and reduced range of motion.  (*Id.*)  However, under the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support her position.  Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record.  *See Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012).  Although evidence in the record could support Plaintiff's position, after a careful review of the record as further outlined herein, the evidence was not such that a reasonable factfinder could not have reached any other conclusion.

Plaintiff also argues that the ALJ improperly took into consideration the format of Dr. Anghel's medical source statement in affording the opinion weight.  (Dkt. No. 10 at 17 [Pl.'s Mem. of Law].)  Defendant is correct in her assertion that the Second Circuit has held that a "check-off" from is only "marginally useful for purposes of creating a meaningful and reviewable factual record."  *Halloran v. Barnhart*, 362 F.3d 28, 31n.2 (2d Cir. 2004).  Here, the ALJ did not discount the whole of Dr. Anghel's opinion based on the format alone.  The ALJ concluded that Dr. Anghel's "form" was not corroborated by the contemporaneous treatment notes or other evidence in the record.   (T. 27-28.)

"Although the treating physician rule generally requires deference to the medical opinion of a claimant's treating physician, ... the opinion of the treating physician is not afforded controlling weight where ... the treating physician issued opinions that are not consistent with other substantial evidence in the record...." *Halloran,* 362 F.3d at 32 (2004); *Veino v. Barnhart,* 312 F.3d 578, 588 (2d Cir.2002); *see also Kennedy v. Astrue,* 343 F. App'x 719, 721 (2d Cir.2009) (declining to afford great weight to the treating physician's "check-off form regarding residual functional capacity" explaining that a treating physician's opinion need not be given great weight when it is not consistent with other substantial evidence of record, including the opinions of other medical experts).

Dr. Harris oversaw Plaintiff's pain management for her low back pain. (T. 327.) On July 20, 2012, Dr. Harris noted Plaintiff was able to "walk short distances and climb more than one flight of stairs" and Plaintiff was able to "lift up to ten pounds occasionally, but [was] unable to do any work." (*Id.*) On physical examination, Dr. Harris observed Plaintiff walked with a slight limp and had difficulty getting out of a chair. (T. 328.) Dr. Harris observed "significant" tenderness in the lumbar facts and left sacroiliac joint. (*Id.*) Dr. Harris observed no muscle atrophy, full motor strength, normal sensation, and discomfort with straight leg raise on the left. (*Id.*) Dr. Harris recommended Plaintiff undergo medial branch blocks of the lumbar spine, medication, and possibly aqua therapy. (T. 329.)

On June 12, 2013, Dr. Harris, along with Mylene Jumalon, FNP-C, completed a medical source statement. (T. 353-357.) Dr. Harris opined Plaintiff was able to frequently, and occasionally, lift and carry up to ten pounds. (T. 353.) Dr. Harris opined Plaintiff could stand and/or walk less than two hours in an eight hour workday. (*Id.*) Dr.

Harris did not state how long Plaintiff could sit in an eight hour workday; however, he did state Plaintiff "must periodically alternate sitting and standing to relieve pain or discomfort." (T. 354.)

Regarding non-exertional limitations, Dr. Harris opined Plaintiff could occasionally climb and balance. (T. 354.) He opined Plaintiff could never kneel, crouch, crawl, or stoop. (*Id.*) Dr. Harris opined Plaintiff had no manipulative limitations and no visual/communicative limitations. (*Id.*) Dr. Harris opined Plaintiff should be limited in her exposure to: temperature extremes, dust, vibration, humidity/wetness, hazards, and fumes, odors, chemicals, and gases. (T. 356.)

The ALJ afforded Dr. Harris's July 2012 opinion "some weight." (T. 28.) The ALJ reasoned Dr. Harris's opinion regarding Plaintiff's ability to walk short distances, climb more than a flight of stairs, and lift up to ten pounds was consistent with the ability to perform sedentary work. (*Id.*) However, the ALJ afforded "no weight" to his statement that Plaintiff was unable to do any work. (*Id.*)

The ALJ afforded Dr. Harris's June 2013 medical source statement "little weight." (T. 28.) The ALJ reasoned the limitation regarding Plaintiff's ability to sit was not supported by the observations of Dr. Williams and Dr. Lorensen. (*Id.*) The ALJ further reasoned that Plaintiff's need to alternate position could be accommodated by regular breaks. (*Id.*) The ALJ stated the limitations outlined in the June 2013 statement were further inconsistent with the opinions of Dr. Lorensen and Dr. Blaber. (T. 29.)

Plaintiff argues the ALJ erred in affording Dr. Harris's opinion less weight because he did not begin treating Plaintiff until 2012. (Dkt. No. 10 at 18 [Pl.'s Mem. of Law].) First, under the Regulations, the ALJ must consider "the frequency of

examination and the length, nature, and extent of the treatment relationship" in affording

weight to an opinion. 20 C.F.R. § 404.1527(c)(2)(i). Therefore, the ALJ did not err as a

matter of law in considering the treatment length in affording Dr. Harris's opinion weight.

In addition, the ALJ did not lessen the weight afforded to the whole of Dr. Harris's

opinion due to length of his treatment. The ALJ specifically held that Dr. Harris's

opinion, that Plaintiff was disabled as of 2008, was afforded "no weight" because he did

not begin treating Plaintiff until 2012. (T. 29.) The ALJ properly reasoned Dr. Harris's

other limitations were inconsistent with other evidence in the record, namely the

opinions of Drs. Lorensen and Blaber. (T. 29.) Therefore, the ALJ did not err in relying

on Dr. Harris's treatment timeframe in affording his opinion weight.

　　　Dr. Lorensen conducted a consultative examination on April 6, 2012. (T. 254-

260.) Dr. Lorensen observed Plaintiff had a normal gait, could walk on heels and toes

without difficulty, could fully squat, used no assistive devices, and was able to rise from

a chair without difficulty. (T. 255.) Dr. Lorensen observed on examination that Plaintiff

had full range of motion in her cervical and lumbar spine; however, Plaintiff had

tenderness to palpation in the lower thoracic and lower lumbar spine areas. (T. 256.)

Dr. Lorensen noted Plaintiff had a positive straight leg raise, but was able to sit

comfortably. (*Id.*) Dr. Lorensen provided a medical source statement in which she

opined Plaintiff had "moderate restrictions for ambulating and climbing stairs . . .

[Plaintiff] should avoid smoke, dust, and other respiratory irritants." (T. 257.)

　　　The ALJ afforded Dr. Lorensen's opinion "some weight." (T. 27.) The ALJ stated

Dr. Lorensen's opinion regarding Plaintiff's environmental limitations were inconsistent

with testing which indicated mild obstructive disease and further Plaintiff continued to smoke, thus evidencing Plaintiff could tolerate some environmental irritants. (*Id.*)

Plaintiff argues the ALJ erred in relying on Dr. Lorensen's opinion because it was not a function-by-function analysis and the ALJ erred in disregarding her environmental limitations. (Dkt. No. 10 at 18 [Pl.'s Mem. of Law].) Plaintiff appears to argue the ALJ erred in her conclusion that Dr. Lorensen's opinion that Plaintiff had "moderate" limitations in walking and climbing stairs was not inconsistent with the ability to perform sedentary work and further the ALJ erred in adopting a portion of the opinion, but not all. (*Id.*)

First, an ALJ does not have to strictly adhere to the entirety of one medical source's opinion. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."), *see also Zongos v. Colvin*, No. 12-CV-1007, 2014 WL 788791, at *9 (N.D.N.Y. Feb. 25, 2014) (finding that it was within the ALJ's discretion to afford weight to a portion of a treating physician's opinion but not to another portion). The ALJ was well within her discretion to adopt Dr. Lorensen's opinion that Plaintiff had moderate limitations in her ability to walk and reject Dr. Lorensen's opinion that Plaintiff should avoid smoke, dust, and other respiratory irritants.

Second, the ALJ did not outright reject Dr. Lorensens' environmental limitations, but found that Plaintiff could tolerate occasional exposure to respiratory irritants. In doing so, the ALJ did not substitute her own lay opinion as Plaintiff asserts. (Dkt. No.

10 at 18 [Pl.'s Mem. of Law].)  In making her RFC determination, the ALJ took into consideration Dr. Lorensen's opinion, as well as objective testing which indicated mild pulmonary obstruction and the fact that Plaintiff continued to smoke, which indicated Plaintiff could handle some exposure to respiratory irritants.  (T. 27.)  It is the role of the Commissioner, not the reviewing court, "to resolve evidentiary conflicts."  *Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013) (citing *Carroll v. Sec'y of Health & Human Servs.,* 705 F.2d 638, 642 (2d Cir.1983)).

Although Dr. Lorensen did not provide a function-by-function medical source statement, "the opinions of treating or consulting physicians need not be reduced to any particular formula" so long as the opinion is not so vague as to prevent the ALJ from making the necessary inference that Plaintiff could perform sedentary work.  *Curry v. Apfel*, 209 F.3d 117, 123 (2d Cir. 2000), *superseded by statute on other grounds*, ("While the opinions of treating or consulting physicians need not be reduced to any particular formula, Dr. Mancheno's opinion is so vague as to render it useless in evaluating whether Curry can perform sedentary work. In particular, Dr. Mancheno's use of the terms "moderate" and "mild," without additional information, does not permit the ALJ, a layperson notwithstanding her considerable and constant exposure to medical evidence, to make the necessary inference that Curry can perform the exertional requirements of sedentary work.")

Here, the ALJ did not rely solely on the opinion of Dr. Lorensen in formulating her RFC determination.  Further, a reading of the ALJ's decision indicated that the ALJ reasoned a moderate limitation in the ability to ambulate would not preclude sedentary work which required up to two hours of standing/walking in an eight hour workday.  20

C.F.R. § 404.1567(a). Therefore, the ALJ did not err in affording "some weight" to the opinion of Dr. Lorensen. To be sure, Dr. Lorensen failed to provide a function by function analysis and her opinion that Plaintiff had "moderate" limitations in walking, without more, was vague; however, the ALJ did not rely solely her opinion in formulating her physical RFC. The ALJ merely indicated that such a limitation was not inconsistent with the exertional requirements of sedentary work.

Dr. Blaber reviewed the medical evidence in Plaintiff's record on May 4, 2012. (T. 288.) Based on the evidence in the record at that time, Dr. Blaber opined Plaintiff was capable of lifting 20 pounds occasionally, ten pound frequently, sitting for six hours, stand and/or walking six hours, and occasionally bending and crouching. (*Id.*) Dr. Blaber further opined Plaintiff was "restricted from dusts and fumes." (*Id.*)

The ALJ afforded Dr. Blaber's opinion "some weight." (T. 27.) The ALJ reasoned Dr. Blaber's opinion that Plaintiff could lift 20 pounds occasionally and stand/walk for six hours was an "overestimation" of Plaintiff's abilities. (*Id.*)

Plaintiff essentially argues that the ALJ selected only those portions of the opinion which were favorable to her conclusion. (Dkt. No. 10 at 19 [Pl.'s Mem. of Law].) However, the ALJ rejected the portion of Dr. Blaber's opinion indicating Plaintiff could perform at a greater exertional level than sedentary work. (T. 27.)

The ALJ reasoned Dr. Blaber's postural limitations were not supported by the record. (T. 27.) However, sedentary work only requires occasional stooping and crouching; therefore, any error to include this limitations would be harmless. SSR 96-9p, 1996 WL 374185 at *7 ("restriction to occasional stooping should, by itself, only minimally erode the unskilled occupational base of sedentary work" and "[p]ostural

limitations or restrictions related to such activities as climbing ladders, ropes, or scaffolds, balancing, kneeling, crouching, or crawling would not usually erode the occupational base for a full range of unskilled sedentary work significantly because those activities are not usually required in sedentary work").

Plaintiff also argues that the ALJ erred as a matter of law in affording more than little weight to the consultative examiner and State agency medical consultant. (Dkt. No. 10 at 19 [Pl.'s Mem. of Law].) As Defendant properly asserts, it is well settled that an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability. *See* 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(e), *see also Leach ex. Rel. Murray v. Barnhart,* No. 02 Civ. 3561, 2004 WL 99935, at 9 (S.D.N.Y.Jan.22, 2004) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.").

In sum, the ALJ did not err in her physical RFC determination or in affording weight to the medical opinion evidence in the record. The ALJ's physical RFC determination was supported by substantial evidence in the record, "[s]ubstantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue,* 569 F.3d 108, 112 (2d Cir.2009). Although the ALJ's physical RFC determination did not track one specific medical opinion in the record, the ALJ relied on the medical evidence as a whole, including medical source statements and treatment notations, in making her RFC determination. The ALJ's decision properly summarized all the

medical opinions in the record and the ALJ provided sufficient reasoning for the weight she afforded to those opinions.

In making her mental RFC determination, the ALJ relied on the medical opinions in the record, Richard Williams, Ph.D. and R. Petro, Psychology. (T. 29.)

Dr. Williams performed a psychological evaluation on May 30, 2012. (T. 268.) He observed Plaintiff was cooperative and well groomed. (*Id.*) Dr. Williams noted Plaintiff was alert and oriented, her attention and concentration were good, her immediate memory was good, her delayed recall was fair, her insight was fair, and her judgment was poor. (T. 268-269.) Dr. William's observed Plaintiff's mood as "very anxious." (T. 269.) He noted Plaintiff would benefit from counseling and indicated she could handle her own funds. (*Id.*) Dr. Williams did not provide a medical source statement, instead he reported Plaintiff's allegation of limitations and stated that her "reported functioning [was] consistent with her mental status." (*Id.*)

Dr. Petro reviewed the medical record on June 7, 2012. (T. 286.) Based on the evidence in the record, Dr. Petro opined Plaintiff appeared to be affected by stress, but there were no marked areas of limitation and she would be capable of a job completing simple tasks in a low stress work situation with low contact with the public. (*Id.*)

The ALJ afforded the opinions of Drs. Williams and Petro "some weight." (T. 29.) However, the ALJ afforded Dr. William's "functional assessment" no weight because it was a recitation of Plaintiff's subjective complaints and was not supported by his mental status examination. (*Id.*)

Plaintiff essentially argues the ALJ erred in her assessment of Plaintiff ability to handle stress because the record contained evidence that Plaintiff had a greater

difficulty dealing with stress than the ALJ's RFC accounted for. (Dkt. No. 10 at 21 [Pl.'s Mem. of Law].)[2] As stated herein, under the substantial evidence standard of review, it is not enough for Plaintiff to merely disagree with the ALJ's weighing of the evidence or to argue that the evidence in the record could support her position. Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in record. *See Brault,* 683 F.3d at 448.

The record containing limitations due to Plaintiff's mental health was limited. However, the ALJ provided a thorough evaluation of Plaintiff's mental health treatment in her decision. In her step two analysis, the ALJ gave a detailed synopsis of Plaintiff's subjective complaints, medical treatment, and assessments made by Olalekan Badiru, M.D. and Dr. Anghel. (T. 17-19.) The ALJ further discussed Plaintiff's mental limitations at steps three and four in her decision. (T.22-24, 29-30.)

Despite the sparse record, substantial evidence supported the ALJ's mental health RFC. The ALJ concluded that evidence did not support a limitation to low contact with the public and Plaintiff's difficulties dealing with stress were provided for by limiting Plaintiff to unskilled work. (T. 29-30.) The ALJ's conclusion was supported by evidence in the record which indicated Plaintiff was able to function socially and deal with multiple stressors. For example, Dr. Badiru noted that despite feeling stressed, Plaintiff was calm and cooperative. (T. 314, 315, 317, 320, 321, 322, 359.) Therefore, the ALJ properly relied on medical evidence and notations indicating Plaintiff was cooperative and had adequate social skills in making her mental RFC determination.

---

[2]     Further, in support of her argument, Plaintiff cites primarily to Plaintiff's own subjective statements of limitations. (Dkt. No. 10 at 21.) The ALJ determined that Plaintiff's statements were not entirely credible and the ALJ's credibility determination will be discussed in greater detail herein.

*See Stottlar v. Colvin*, No. 5:13-CV-00047, 2014 WL 3956628, at *16 (N.D.N.Y. Aug. 13, 2014) (ALJ properly afforded opinion that plaintiff "may have" difficulty understanding instructions and "may have" difficulty interacting appropriately with others little weight where mental status examinations revealed plaintiff's attention and concentration were intact, and plaintiff was cooperative, her manner of relating, social skills, and overall presentation were adequate).

The ALJ properly weighed the medical evidence in the record and the physical and mental RFC determinations were supported by substantial evidence.

### B.    The ALJ's Credibility Determination

A plaintiff's allegations of pain and functional limitations are "entitled to great weight where ... it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (*quoting Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 (2d Cir.1992)). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (citing *Marcus v. Califano,* 615 F.2d 23, 27 (2d Cir.1979)). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

"The ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. First, the ALJ must determine whether the claimant has medically determinable impairments, which could reasonably be expected to produce the pain or other symptoms alleged."  *Id.*, at 271.

> Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. Because an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, an ALJ will consider the following factors in assessing a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.

*Id., see* 20 C.F.R. § 404.1529(c)(3)(i)-(vii). Further, "[i]t is the role of the Commissioner, not the reviewing court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses," including with respect to the severity of a claimant's symptoms." *Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013) (citing *Carroll v. Sec'y of Health & Human Servs.,* 705 F.2d 638, 642 (2d Cir.1983)).

Here, the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged; however, Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were only partially credible. (T. 30.)

In making her credibility determination, the ALJ noted Plaintiff's credibility was enhanced by her good work history and that she pursued medical treatment for her pain. (T. 30.) The ALJ also discussed Plaintiff's medications and found Plaintiff to be "disability seeking." (*Id.*) In her credibility analysis, the ALJ outlined Plaintiff's testimony and objective medical evidence in the record. (T. 26-30.)

Plaintiff argues the ALJ's credibility determination was "internally inconsistent and made in error." (Dkt. No. 10 at 12 [Pl.'s Mem. of Law].) Plaintiff asserts that the ALJ's determination at the first step of the credibility analysis, that her medically determinable impairments could reasonably be expected to cause her symptoms, was inconsistent with her determination at the second step, that Plaintiff's statements concerning the intensity, persistence, and limiting effects were not fully credible. (*Id.* at 12.) These statements were not inconsistent or made in error as Plaintiff alleges. (*Id.*) These statements were made in accordance with the ALJ's Regulatory duty to assess Plaintiff credibility under the two-step process.

Plaintiff argues the ALJ erred in her determination that Plaintiff appeared to be "disability seeking." (Dkt. No. 10 at 12 [Pl.'s Mem. of Law].) The ALJ concluded Plaintiff was "disability seeking" because she was advised by Dr. Anghel to be evaluated by Dr. Harris first to see if her condition improved before applying for disability benefits. (T. 30-31.) Any error the ALJ may have made in taking into consideration Plaintiff's motives for seeking disability were harmless. The ALJ still considered Plaintiff's alleged onset date and further, this was but one factor in the ALJ's overall credibility determination.

Plaintiff also argues the ALJ erred in discrediting Plaintiff for failure to pursue physical therapy. (Dkt. No. 10 at 12 [Pl.'s Mem. of Law].) However, in making a credibility determination the ALJ must take into consideration Plaintiff's treatment and medications. 20 C.F.R. §§ 404.1529(c)(3)(iv)-(v). The ALJ noted that Plaintiff refused physical therapy because Plaintiff claimed it did not help in the past. (T. 31.) The ALJ also noted Plaintiff reported that her pain was alleviated after injection therapy and Plaintiff was not taking medication as prescribed. (*Id.*) The ALJ did not err in taking into

consideration Plaintiff's treatment and medication as part of her overall credibility determination because the Regulations direct her to do so.  Further, there is no indication that the ALJ misread the record.  The ALJ clearly stated in her decision that Plaintiff refused physical therapy because it did not help in the past.  (T. 31.)

Plaintiff goes on to argue the medical evidence in the record supports Plaintiff's statements regarding the effects of her symptoms arguing "so long as the medical evidence could support Plaintiff's asserted symptoms, the symptoms are credible unless an analysis [of the Regulatory factors] provides an adequate basis for a different conclusion."  (Dkt. No. 10 at 13-14 [Pl.'s Mem. of Law].)  Here, the ALJ properly analyzed the medical evidence of the record in accordance with the Regulations in making her credibility determination.  As stated herein, the ALJ summarized Plaintiff's testimony, including her activities of daily living, and objective medical evidence in the record.  The ALJ further analyzed Plaintiff's medical treatment, including medications and side effects.  Therefore, the ALJ did not err in her credibility assessment and it is recommended that the ALJ's credibility determination be affirmed.

### C. The ALJ's Step Five Determination

At step 5 in the sequential evaluation, the ALJ was required to perform a two part process to first assess Plaintiff's job qualifications by considering his physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy that Plaintiff could perform.  42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); *Heckler v. Campbell,* 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983). The second part of this process is generally satisfied by referring to the applicable rule of the Medical–Vocational Guidelines set forth at 20 C.F.R. Part 404,

Subpart P, Appendix 2 (commonly called "the Grids" or the "Grid"). *See Bapp v. Bowen,* 802 F.2d 601, 604 (2d Cir.1986).

The Second Circuit has explained that the ALJ may not solely rely on the Grids if a non-exertional limitation "has any more than a 'negligible' impact on a claimant's ability to perform the full range of work." *Selian v. Astrue,* 708 F.3d 409, 421 (2d Cir.2013) (quoting *Zabala v. Astrue,* 595 F.3d 402, 411 (2d Cir.2010)). A non-exertional impairment is non-negligible "when it ... so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity." *Zabala,* 595 F.3d at 411. Whether VE testimony is required must be determined on a "case-by-case basis." *Bapp* 802 F.2d at 605–06. Further, "the mere existence of a non-exertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the [Grids]." *Id.* at 603.

At step five the ALJ determined that given Plaintiff's age, education, work experience, and RFC there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (T. 31-32.) The ALJ concluded that Plaintiff's non-exertional limitations did not erode the occupational base of sedentary work and therefore, the testimony of a vocational expert was not required. (T. 32.) Specifically, the ALJ held that under SSR 85-15, Plaintiff's postural limitations had very little effect on the occupational based of unskilled work. (*Id.*) The ALJ also held that Plaintiff's environmental limitations had little to no effect on the occupational base of unskilled sedentary work based on SSR 96-9p and SSR 83-14. (T. 32-33.) In terms of Plaintiff's mental limitations, the ALJ concluded that under the guidance of SSR 85-15 Plaintiff had the capacity to meet the basic mental demands required of unskilled work. (T. 33.)

Plaintiff argues the ALJ was required to elicit the testimony of a vocational expert at step five. (Dkt. No. 10 at 22-23 [Pl.'s Mem. of Law].) As recommended in Part IV.A-B, the ALJ's RFC and credibility determinations were proper. At step five, the ALJ provided a thorough analysis of Plaintiff's non-exertional limitations and the effect of the limitations on the occupational base of unskilled sedentary work. (T. 32-33.) The ALJ properly concluded, based on the guidance of the SSRs, that Plaintiff's non-exertional physical and mental limitations did not significantly erode the occupational base of unskilled sedentary work. Therefore, the testimony of a vocational expert was not required and the ALJ properly relied on the Grids in making a step five determination. **ACCORDINGLY**, based on the findings above, it is

**RECOMMENDED**, that the Commissioner's decision be **AFFIRMED**, and the Plaintiff's complaint **DISMISSED.**

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated:      April 5, 2016

_____
William B. Mitchell Carter
U.S. Magistrate Judge